RECEIVED

MAR 05 2012

CLERK, U.S. DISTRICT COURT
ST. PAUL, MINNESOTA

**district court of the United States
Minnesota district, Saint Paul**

**316 North Robert Street
100 Federal Building
St. Paul, MN 55101
Phone: 651-848-1100
Fax: 651-848-1109**

Civil Case # 12-574

Judge JNE/SER

Date: 3-5-2012

**Petitioners:**

**Thomas-Wayne:Eilertson**
c/o 7108 Georgia Avenue North
Brooklyn Park, Minnesota [55428]
763-561-0621 or 218-245-1013

**Lisa-Joan Connery:Eilertson**
c/o 7108 Georgia Avenue North
Brooklyn Park, Minnesota [55428]
763-561-0621

**PETITIONERS VERIFIED
COMPLAINT FOR REDRESS
FOR FRAUD UNDER TITLE 12
U.S.C. 95, 95 (a)(b) TITLE 28
U.S.C. 1652, AND TITLE 31
U.S.C. 3729 AND ARTICLE III SEC
2, CONSTITUTION**

**13 MEMBER TRIAL BY JURY DEMANDED**

**Respondents:**

**BANK OF AMERICA, N.A
BRYAN MOYNIHAN, Chairman, CEO & President**
Corporate Headquarters (BANK OF AMERICA):
Bank of America Corporate Center
100 North Tryon Street
Charlotte, North Carolina 28255
704-386-5687,  704-386-5972,  704-386-5681

**STATE OF MINNESOTA, in its Private and Corporate Capacity
By: LORI R. SWANSON, dba Attorney General
THE STATE OF MINNESOTA
And LORI R. SWANSON in her Private and Official Capacity**
445 Minnesota Street, Bremer Tower Suite 1100, St Paul, MN  55101
651-282-5700

SCANNED

MAR 0 5 2012

U.S. District Court ST. PAUL

## PARTIES

1.) The Petitioners in this action are Thomas-Wayne family of: Eilertson, and Lisa-Joan Connery family of:Eilertson, Americans on Minnesota, married to each other, whistleblowers and victims of unlawful foreclosure eviction crisis. For purposes of this action, petitioners will be referred to as "Petitioners".

2.) Respondent, BANK OF AMERICA, NATIONAL ASSOCIATION is located in Charlotte, North Carolina. At any time in this verified complaint the words BANK OF AMERICA are used it shall mean itself as Respondent, BAC HOME LOAN SERVICING LP, BAC GP LLC, its' General Partner, and Subsidiaries, BRYAN MOYNIHAN, CHAIRMAN CEO as agent, and shall hereinafter be named Respondent.

3.) Respondent, STATE OF MINNESOTA, in its' private and Corporate capacity by and through LORI R. SWANSON, dba Attorney General, STATE OF MINNESOTA in her private and Official Capacity also as Respondent. At any time the words STATE OF MINNESOTA are used it shall mean the private and Corporate Capacity of the STATE OF MINNESOTA and its' affiliated private offices and certain as yet un-named counties as political (corporate) subdivisions.

4.) John Does, Jane Does and ABC Corporations, To be named a later date

## ACTION FOR: FRAUD, BANK FRAUD
## CONSPIRACY / OBSTRUCTION OF JUSTICE
## TAX FRAUD, MONEY LAUNDERING, WIRE FRAUD, PERJURY,
## SUBORNATION OF PERJURY, DUE PROCESS VIOLATIONS
## OFFICIAL OPPRESSION, NEGLECT, UNDER THE CONSTITUTION

## I. PETITION

PETITION IN THE NATURE OF A SUIT FOR DEPRIVATION

OF FEDERALLY PROTECT RIGHTS, TITLE 42 USC 1983, 1981, 1985, 1988

TITLE 18 USC 4, (ACTIVE CONCEALMENT) 241, 242, 1512, 1968, 1964 FOR

INJUNCTIVE AND DECLARATORY RELIEF UNDER THE 14TH AMENDMENT

SECTION 4,  MN. CODES 609.43 MISCONDUCT OF PUBLIC OFFICER OR

EMPLOYEE. AND OTHER DAMAGES AS THE COURT SHALL DETERMINE

REASONABLE, LAWFUL, AND JUST.

## II. JURISDICTION

This district court of the United States has subject matter

jurisdiction under the laws of the United States of America, Article III § 2,

Constitution; 42 U.S.C. 1983, 1985 and 1986 (failure to prevent) as

conferred by the Constitution, and 28 USC 1331,1343 and 2254 under the

1st, 4th, 5th, 6th, 8th, and 14th Amendments. This action involves

abridgement of constitutional claims, and jurisdiction is supplemented by

28 USC 1367(a) and 28 U.S.C. 1652, and challenges the constitutional

violations of state and federal law, procedure and *practice* by state and

federal officials and officers of the court. Minnesota Became the 32nd State May 11, 1858, and is no longer a territory but a State, and a Court under Article III of the constitution.

Public Law 112-63 clearly shows that when the phrase district court is used, It refers to alien resident or to a foreign State. Under 28 U.S.C.1391 under the heading United States District Court is a foreign State Court under 28 USC 1602 -1611 FSIA and 28 USC 610 clearly shows that the district court of the United States does exist and that United States District Courts are territory Courts. This Court under the definition as district court of the United States is Article III Court in the confines of 28 USC PART I -- ORGANIZATION OF COURTS sec. 103

### III. VENUE

The district of Minnesota in Saint Paul is the Proper Venue simply based on the States location noted in 28 USC PART I--ORGANIZATION OF COURTS sec 103 and  28 U.S.C. 1446 for removal of State Proceeding, and for opening this related civil action based on Supplemental jurisdiction as noted above (28 U.S.C. 1367(a))

### INTRODUCTION AND OPENING STATEMENT

1. Now Comes Petitioners, Thomas-Wayne: and Lisa-Joan Connery: of the Family of Eilertson, Americans on Minnesota for an action for redress of grievances in accordance with the constitution for the united States of

America, Article III sec. 2., Bill of Rights particularly 1st, 4th, 5th, 6th, and the 11th Amendment. Acting as whistleblowers who made good faith efforts to notify who they believed to be lawful authority, fiduciaries and public servants for the public trust pursuant to their oath, who Petitioners thought swore an oath to protect them against enemies both foreign and domestic.

2. Now, find themselves being punished at the State level for acting as whistleblowers with no protection from lawful authority. Petitioners provided Respondents and as yet unnamed Respondents with what they believed to be supporting facts, records, evidence, and information about the unlawful foreclosure conducted against them and many Constitutional violations of their rights and denial of due process.

3. Petitioners provided Respondents and unnamed Respondents the opportunity to answer their concerns but were deprived rights under color of law as an answer.

4. Petitioners hold what thy believe is enough supporting evidence to prove the intent of the Respondents and unnamed Respondents, who appear to be direct or indirect parties to securitization of the account, monetization of petitioners signatures, tax evasion, fraud, embezzlement, fraudulent conveyances, conflict of interest malfeasance of office and theft of property by force.

5. Respondents and unnamed Respondents who were noticed of Petitioners findings administratively appeared to have agreed with all of Petitioners findings by contract (Hale v. Henkel) by their actions and failure of action to answer in honor when noticed.

6. Respondents, by virtue of the recent National settlement with the Banks and State Attorney's General, this is believed to be supporting evidence to the facts and the statements of Petitioners verified claims.

7. The Petitioners found what they believe appears to indicate many conflicts of interest of the named and unnamed Respondents by their actions and failure to act when noticed, indicates their agreement to elements of Fraud and malfeasance of office.

8. Petitioners thought if they went to the public servants and told them what they believed to be true they would have acted in honor to the concerns and corrected the records and investigated this matter.

9. Petitioners believe they have enough supporting evidence to prove and support their claims in this matter.

10. The Petitioners made all efforts to expose what would be defined as false claims by the bank attorneys against not just the Petitioners but the people of this State in the foreclosures;

11. The Petitioners soon found out that those who held a public office under this State began to use official oppression and neglect to cover up Petitioners complaint on this topic;

12. The Petitioners made efforts to address these issues by administrative the process in honor, but found that Respondents appeared to have other motives;

13 .The Petitioners now find that the county prosecutor who claims to represent the STATE OF MINNESOTA under the authority of the Attorney Generals Office for this State, is bringing criminal action against the Petitioners with no real party of interest;

14. These claims by the County prosecutors office stem from the unlawful bank foreclosure on the Petitioners.

15. The County prosecutors office is using that public office in the name of the STATE OF MINNESOTA as a means of official oppression to create

particular malice, and malfeasance against the Petitioners for filing an administrative complaint.

16. The Petitioners have been denied their Rights under the sixth amendment to confront the accuser and witness pursuant to Rules of Court under Rule 17, real party of interest by the State Court and prosecution.

17. It is a fact the State Court and the county prosecution is using the Eleventh Amendment of the U.S.  Constitution against the Petitioners in the State Court, due to the fact all issues in law, constitution, and case law have been denied.

18. The Petitioners will further state that the public defenders that the court appointed to the Petitioners have refused to bring up any constitutional claims violations and refuse to address the State statutes of this State and have refused to bring up Public Laws in the Petitioners defense.

19. The Petitioners have exhausted their administrative avenues and now face particular malice, malfeasance prosecution by the STATE OF MINNESOTA in the county court, to which the Petitioner was already told even before a trial began by their public defenders, the petitioners  "are going" to jail, not "maybe" or "could" go to jail, but are going to jail.

20. Where is the Petitioners defense? Why are these public defenders not defending the public? Why is it when the people are given a public defender it is an automatic execution?

21. The Petitioners had no choice but to bring this issue before the district court of the United States as a means of remedy.

22. The Petitioners will point to the Bank and Banking section of the CFR and USC under Title 12. The defendants are aware of section 95, 95a, 95b and section 411 and public law 1 48 stat C1 any and all agreements with the defendants clearly fall under these sections of the banking codes and public law.

### IV. Initial Statements of Fact

1.) The Respondents, the STATE OF MINNESOTA by and through LORI R. SWANSON, LORI R. SWANSON, Minnesota Attorney General in fact agrees by her settlement with the Banks that Petitioners, who have spent the last approximately 2 years trying to get answers and protection from her were victims of an lawful foreclosure.

2.) The Respondent, BANK OF AMERICA, N.A and it's Subsidiaries et. al have agreed they unlawfully foreclosed on Petitioners and by the recent settling with the States, thereby admitting their wrongdoing.

## V. VERIFIED COMPLAINT

1. on or about May, 2009, Respondent, BANK OF AMERICA N.A., and is, the foreclosing entity claimed to have purchased Petitioners' so-called Mortgage loan from its' merged partner, COUNTRWIDE HOME LOANS;

    A. BANK OF AMERICA N.A. and through BAC HOME LOANS SERVICING LP was the foreclosing entity that would not provide verification of debt when asked,

    B. nor proof of it owning the original "Note", or

    C. possessing the original documents necessary to prove standing to foreclose,

    D. nor proof of discharge of obligation after its' purported purchase of mortgage, among other things, which begat this verified complaint.

    E. Further, this action is being brought forth as the Foreclosure issues herein have not only economically and psychologically affected Petitioners family;

F.  it has adversely affected families all across this county.

2. The preceding Administrations Bailout of the Banking Industry already paid the Bankers for their purported "losses",

A. Banks, through third party debt collectors, are still allowed to foreclose on homes without verification of said debt while accepting taxpayer funds for their rescue.

B. STATE OF MINNESOTA is a non Judicial State which forecloses by Advertisement without verification only presumption of debt,

C. Sheriff will not warranty or verify the accuracy of the information, he uses to auction homes, only a presumptive ad run by the debt collector acting as foreclosing attorney.

D.  On or before May 2009, Petitioners discovered that mortgage backed securities fund a portion of state employee retirement funds which may indicate a conflict of interest;

E.  LORI R. SWANSON, State of Minnesota Attorney General, also sits On the Minnesota State Board of Investments which appears to be a conflict of interest by the investments being made.

F. **Respondent, LORI R. SWANSON** (even after being served lawful

notices and complaints of illegal activity on or about 11/1/ 2009,

12/23/2009 and 11/18/2009). Did not respond nor did she

investiagate Petitioners concerns.

1. This matter began on or about the day of February 27, 2007 when Petitioners

thought they were getting a loan for $208,000 dollars on a refinance, to lower the

interest rate and do some home improvements from;

2. The named "Lender" on documents executed was Mortgage & Investment

Consultants, Inc. on a MN Corporation 2489 Rice Street, Suite 200, St Paul,

Minnesota. a MINNESOTA CORPORATION and existing under the laws of

MINNESOTA.

3. The Legal Description to property is Lot 13, Block 1, "Lake View Terrace

Addition To Minneapolis, Hennepin County",

4. in which Petitioners held title as: Thomas Wayne Eilertson & Lisa Joan

Connery Eilertson,Married to each other and owners of an estate In fee simple.

Located at: 4448 Cedar Avenue South, Minneapolis, Minnesota State, County of

Hennepin;

5. The transaction took place at Lenders closing office in Edina, Minnesota for said "Lender", Mortgage & Investments Consultants Inc,

6. In which numerous documents were placed before Petitioners to sign including Mortgage Deed and Note;

7. The records and the servicing documents dated on or about February 27, 2007 will show several irregularities that indicate securities fraud, bank fraud and at least three transactions stemming from the "closing", all on the same day.

8. On or about February, 2007 Closing office contracted with Title Company for commitment to insurance of said Property Title.

9. Petitioners met with Closing Agent, Emily St. Martin on or about February 27, 2007, and;

10. Had signed several copies of said documents, and

11. This was held out to be "normal procedure", all the while shuttling the paperwork out the door to plant a veritable "money tree" for several of the within named Respondents as further research into securitization has revealed.

12. Please note in <u>Whip v. Iverson</u>, 43 Wis. 2d 166, it was held that, "It is not necessary for rescission of a contract that the party making the misrepresentation should have known that it was false;

A). ... "but recovery is allowed even though misrepresentation is innocently made, because it would be unjust to allow one who made false representations, even innocently, to retain the fruits of a bargain induced by such representations."

13. On or about March 27, 2007 the closing Agent recorded onto Title Certificate 1144337 Mortgage & Investment Consultants INC, about 30 days later even though it was sold and transferred out of their name;

14. with Mortgage Electronic Registration Systems Inc., (a DE Corp) as nominee, no Note was recorded with the Mortgage at the County Recorders office;

15. The "Note" and Mortgage Deed were separated, so where did the Note go?

16. Closing Agent did not record the Note with Mortgage Deed only the Mortgage, where is the Original Note?

17.  Evidence supports it appeared to be sold in the closing documents several times out of Mortgage & Investment Consultants, Inc. name on February 27, 2007 the evidence will show otherwise separated;

18. True chain of Title was not recorded, all the way up to fellow **Respondent, BANK OF AMERICA N.A.,** and;

19. Closing Agent recorded Mortgage and Investment Consultants on Title even after the purported Mortgage Deed, Note, and "loan" left their hands several times on February 27, 2007 at the closing;

20. Respondent and others may have also failed to pay proper MRT, (Mortgage Registration Tax) and;

21. Income tax that should have been paid to the State, from IRS form 3949A, as a 424B5 prospectus may show.

22. Plaintiffs started to get educated as they realized they were misled and started to question the validity of this transaction finding out that it was not a loan at all and;

23. Lacking elements of a lawful two party contract;

24.  So starting on or about April 29, 2009 and to this date, Petitioners made many attempts to notice who Petitioners thought would be honorable Public Officials by;

25. accepting their sworn oaths of office to uphold Petitioners rights by contract and binding them to it as is their fiduciary duty.

26. Petitioners made numerous attempts to notice all Constitutional authorities who Petitioners thought would help investigate and or correct the record for this unlawful foreclosure;

27. By the Public Servants and fiduciaries acts, actions and failure to act when noticed it made petitioners lose trust in them.

28. Respondents and yet unnamed Respondents failure to investigate and help Petitioners appeared to become a misprision of felony with active concealment, and a conflict of interest.

29. Petitioners home was unlawfully foreclosed on by Respondent BANK OF AMERICA N.A., and it's subsidiary BAC Home Loan Servicing L.P. and;

30. who also claimed to buy Petitioners home at Sheriff Sale on December 8, 2009 through their Law Firm;

31. The documents have changed hands, banks, warehouse lenders, and Investors;

32. in a monetization and securitization scheme to enrich all involved time and again.

33. When confronted with a mountain of evidence of illegal activity, those in public offices hindered, or;

34. Otherwise withheld any opportunity for remedy or redress.

35. Instances like Petitioners' are being reviewed and adjudicated in favor of homeowners all over the country.

36. As it regards redress, Petitioners are being punished for reporting crimes to proper authorities which they were repeatedly told to do,

37. Yet received no response.

38. Petitioners were attempting to petition for redress of their several grievances and;

39. To acquire remedy for their losses, which were untold and massive.

40. It has never been the intent of Petitioners to be belligerent or

41. anything but non-combative neutral with the State or anyone else.

42. Petitioners are neutral, peace loving people who, have lost everything due to the facts stated in this complaint.

43. Those who swore oaths to uphold the Constitution have turned war like against Petitioners;

44. Continually denying answers or remedy or upholding their bond and fiduciary duties to Petitioners;

45. Fiduciaries who swore an Oath to uphold the public trust have breached said trust and left an innocent family homeless and broken.

45. On or about July 2009, BANK OF AMERICA, Respondent, did initiate unlawful foreclosure action by and through its' law firm, after being noticed of petitioners status and knowledge of the banking and monetary system,

A.)  while maintaining a scheme or artifice to defraud due in part to its' shareholder position in MERS, or Mortgage Electronic Registration Systems Inc.

B.)  Also in part due to the un-denied monetization of Petitioners debt instrument by using fractional reserve banking, and a counterfeit copy only, as Respondent could never produce a wet ink original.

46. On or about February 27, 2007, As grantor without realizing it, Petitioner executed the Note with the belief that he was entering into a contract,

47. Which Respondent has yet to produce a signed two party copy of. See Title 18 U.S.C. 1344 (2)), Bank Fraud.

48. On or about July 17 2009, BANK OF AMERICA, Respondent, was asked by verified affidavit,

49. to provide verified proof of a debt owed to them by Petitioners, or

50. validation of same in any way shape or form, pursuant to the Fair Debt Collection Practices Act;

51. On or about August 4, 2009 Petitioners received collection letter from Debt collector acting for: BAC HOME LOAN SERVICING LP, Petitioners returned with Affidavit(s) for the said debt collector to notice, and;

52. answer and verify his claims upon his full commercial liability as Petitioners were not behind on their payments at that time, Yet;

53. No response was received.

54. On or about 8/8/2009, an unsigned, uncertified Notice dated July 31, 2009 from BAC HOME LOANS SERVICING LP, a subsidiary of BANK OF AMERICA, N.A. was received stating home loan account 159649080 was delinquent.

55. This letter appeared to be some sort of retaliation for questioning the validity of this Mortgage, because;

56. account was not delinquent at the time this letter was issued, and

57. No response was received.

58. On or about 8/24/2009 Respondent BANK OF AMERICA, N.A., through it's agent , Marla Kochevar sent letter that they intended to respond to affidavits Petitioners served them in twenty in (20) days;

59. No pertinent Notice or correspondence was received;

59. Respondent BANK OF AMERICA N.A., refused to rebut or refute facts in the affidavits or;

60. Respond through the Notary Public, for preservation of administrative process.

61. On or about 9/11/2009 Debt Collector sent letter dated September 4, 2009 that they already scheduled a Sheriffs Sale on November 4, 9:00am;

62. Respondent and their attorney still had not verified the debt, proven their right to foreclose or;

63. rebutted the affidavits and the facts therein stated and served to them.

64. On or about August 2009, and 9/14/2009,10/1/2009, 11/4/2009, 12/4/2009, 1/27/2010  in writing, Petitioners tried many times to contact and meet directly with the County Sheriff, who was

65. The Lawful Authority we thought would help us in this matter before, right up to and beyond the foreclosure sale.

66. The Sheriff refused to respond and / or meet with us.

67. If this was even a true sale, please have Respondents show why no tax was paid on this transaction and;

68. who did BAC Home Loan Servicing, LP buy the home from if they already owned It? And;

    A. Who got paid?

69. No answer was forthcoming, a violation of RESPA settlement disclosure laws.

70. Respondents' law firm flooded the county with documents, attempting to form a proper chain of title,

    A.) which they were unable to accomplish,

    B.) yet were allowed to foreclose anyway under the auspices of the County Recorders Office, and the County Attorneys Office.

71.  On or about May 2009, Respondent, BANK OF AMERICA, NA claimed to purchase or otherwise merge with COUNTRYWIDE HOME LOANS, LP;

    A.)  Then Respondent claimed to be a servicer for Petitioners' purported mortgage.

72.  The record will show in the original servicing documents that this transaction may have been fraudulent and void from the start because;

    A.)  Petitioners debt instrument, as yet unsigned by any lender or bank, was repeatedly monetized based on fractional reserve banking needing only a signature.

    B.)  to which details of this consent for monetization remain undisclosed by Respondent.

73.  Respondent was fully aware of this activity based on their continued aggressive correspondence to foreclose without answering Petitioners.

74. Respondent was fully aware that this account was settled and closed (hence the term "closing") on February 27, 2007;

A.)  and that their payment demands were nothing more than extortionate credit transactions.

75. Respondent claims to have purchased purported loan by its' acquisition of Countrywide Home Loans in July of 2008,

76. Petitioner has no record or evidence that Respondent didn't know how many accounts and or loans were produced by this one transaction.

77. The evidence seems to point to at least three, based on three sets of closing documents and three sets of payment slips, and

78. Three different servicers demanding payment.

79. Did Petitioners take out **A** loan, or **THREE** loans, or no loan at all?

80. The following is a breakdown from February 27, 2007, to wit:

81. In the original closing documents three different payment slips issued, showing payments due on April 1st 2007, and;

82.  the sales and transfers of this Mortgage without the Note are evident, stating the payment(s) are all due April 1st 2007 AND;

**A.)** Send payment to: Mortgage & Investment Consultants Inc, (Originator)

April 1st 2007.

**B.)** Then send payment to: MortgageIT Inc., on April 1st 2007.

then send payment to:

**C.)** GMAC Mortgage LLC. Also on April 1st, 2007, Notice was also included to

change Insurance and list GMAC Mortgage, LLC., P.O. BOX 4025, CORAPOLIS,

PENNSYLVANIA 15108-6942;

**D.)** On or about March 6, 2007 Petitioners received a letter from National City

Warehouse Resources, MS 25-C17D Interim Servicing Department, 309 Vine

Street, Cincinnati, Ohio 45202, that they were servicing for: Mortgage &

Investment Consultants, INC. and;

**E**) to send first payment due on April 1st 2007 to them, National City Warehouse

Resources, a payment coupon was attached, and issued in the letter. Loan

Number: 6003336332.

**F.)** On or about March 13, 2007 Petitioners received another letter from National

City Warehouse Resources which they said effective 4/2/2007 Petitioners were

to send payments to MortgageIT Inc. 4850 T Rex Ave Ste 100 Boca Raton, FL

Loan # 40775934, or NCWR# 600336332;

**G.)** On or about 4/3/2007 Petitioners received similar notice from GMAC MORTGAGE, LLC.

**H.)** Then on or about May 2007, Petitioners were sent notice to send payments to COUNTRYWIDE HOME LOANS;

**I.)** Petitioners sent Notice to all parties from A-H in verified affidavit format requesting verification answers, no answer was forthcoming.

**J.)** Petitioners made payments on time as scheduled to COUNTRYWIDE, also known as COUNTRYWIDE HOME LOAN SERVICING.

83. Recorded documents dated for August 18th, 2009 by: Debt Collector Attorney and Law Firm who also acted as Vice President for MERS, MORTGAGE ELECTRONIC REGISTRATION SYSTEM and to transfer into BAC HOME LOAN SERVICING name, shows Respondents were already intending to get into position to foreclose.

84. Notice was found published, **MERS "must not be named as a plaintiff in any foreclosure action, whether judicial or non-judicial, on a mortgage loan owned or securitized by Fannie Mae."**

85. However, it is interesting that Fannie Mae is issuing these instructions, but apparently no one has told them that a servicer isn't a real party in interest for one because;

86. Under the Hobbs Act the loans had already been paid in full by transfer;

87. Petitioners believe the rush to foreclose was triggered because they questioned the validity of the loan and;

88. The entire transaction, and

89. Respondents and it's subsidiaries, in all of their capacities did not want to answer and provide Petitioners with proof that a lawful contract existed that gave Respondent the right to foreclose;

90. On or about September 4th, 2009 Respondent, Its subsidiaries, and its attorney recorded documents dated August 17, 2009 on title Certificate 1144337 that reads; assignment of mortgage, and;

91. Notice of Pendency of proceeding and Power of Attorney to foreclose mortgage by Corporation, without standing to do so;

92. A John Doe, on the same day recorded documents on title claiming to be vice president of MERS, MORTGAE ELECTTRONTIC REGISTRATION SYSTEM, and nominee for BAC Home Loan Servicing, LP a subsidiary of BANK OF AMERICA, N.A.,

93. Respondents BANK OF AMERICA N.A. and it subsidiaries did not attend sheriff sale scheduled for November 4th 2009 at 9:00AM;

94. On or about 11/7/2009 a postponement letter, which was back dated, stamped, not signed October 30, 2009 from Respondents Attorney to change date of sheriff sale to 12/08/2009,

95. Then, placed another ad to postpone the sale after they did not appear;

96.  On or about December 4, 2009 Respondents Attorney created another Title Certificate 1332965 from unknown documents even before said sheriff sale naming Federal National Mortgage Association, 14211 Dallas Parkway, Suite 1000 Dallas Texas 7524-2916, "Fannie Mae" as owner of Petitioners property;

97. On or about Dec 8, 2009, 9:00AM County Sheriff Deputy Sergeant conducted Sheriffs sale, Plaintiffs objected several times and also did so in writing with witnesses present who have sworn to these facts;

98. The Deputy Sergeant continued and claimed he sold Petitioners' home to BAC HOME LOAN SERVICING, LP, who claimed they already owned it then;

99. Respondents bought it, from themselves for $214,919.61 (?);

100. On or about Dec 9, 2009 Sheriff's Certificate was recorded on to Title Certificate 1144337 and was unsigned by the Elected Sheriff himself;

101. It appears that Respondents law firm may have been assisted by County Public Servants after knowing power of attorney was revoked;

102. On or about December 4th 2009, and before the actual sheriffs sale, a **Additional new** certificate of title was issued running in favor of Federal National Mortgage Association, through Respondent Law firm also now acting as power of attorney for that FANNIE MAE (FNMA) claiming they owned Petitioners property at the same time Respondents BANK OF AMERICA claimed they owned it.

A. This is an example of County Recorder working in concert with foreclosure Mill Attorneys .

B. Foreclosure Mill Attorney's appear to be able change their capacities and positions by the stroke of a pen, to put forth paperwork a their will.

103. The Additional new Title 1332965 was hidden while Original Certificate of Title 1144337 was still running open listing BAC HOME LOAN SERVING LP;

104. Sheriff sale had not even occurred, why two Certificates' of Titles before said sale.

105. How many titles did the county create for this one property?

106. On or about December 9, 2009 BAC Home Loan Servicing, LP Claimed they bought property at sheriff sale $214,909.61,

107. but FNMA already claimed to own the property in fee simple as of December 4, 2009;

108. Regarding this transaction, no proper chain of title exists,

109. However, the county record is flooded with certificate numbers with respect to this matter that do not seem to make sense;

110. On or about April 15, 2011 a Christa Raszkowski claimed to buy or Mortgage the home for $68,000 and bought it from Federal National Mortgage Association, Fannie Mae;

111. NOT Respondent BAC Home Loan Servicing, LP who said they bought the house at the Sheriffs sale;

112.  This created another Certificate of Title from 1329798, to 1334022, then to Certificate 1332965.

113.  To date Respondents and their agencies and or agents have yet to Produce a lawful bill of sale.

114.  Respondent BANK OF AMERICA N.A. was complained about officially to fellow Respondent LORI R. SWANSON, on or about November 2009, and;

    A) accepted Oaths of office of county officials in writing beginning on or about July, 2009, then

    B) complained to them about possible fraud in August, 2009

    C) again in September, 2009

    D) again in October, 2009

    E) again in November, 2009 to include LORI R. SWANSON, Respondent

    F)  Petitioners reported this criminal activity to Sheriffs Office investigator on December 8th 2009, who proceeded to do nothing, which appears to be misprision of felony with active concealment.

    G) Sheriffs Office Investigator did make visits to Petitioners home on or about December 2009 to tell them he could not investigate his own office, he refused to put this in writing.

115. Respondent BANK OF AMERICA N.A. was complained about officially to Hennepin County Recorder and Registrar of Titles On or about September 2009.

116. A phone conversation with the MACO Recorder of the year, A John Doe on or about September 2009, yielded little understanding or remedy;

117. Knowing about the existence of the fraud, with notes not being recorded with the mortgages and;

118. That MERS (Mortgage Electronic Registration Systems) was not a proper mortgagee or assignee;

119. Public servant did, however, brag exuberantly about how great the MERS recording system is / was for banks like BANK OF AMERICA and that Petitioners issues were "Their problem, not his."

120. Respondent BANK OF AMERICA'S criminal activity was complained about officially on or about December 14th 2009, to Glenn Wilson Jr., fiduciary, and;

121. Commissioner of the Department of Commerce, STATE OF MINNESOTA;

122. Commissioner Wilson, when shown copies of the faulty servicing documents, loudly demanded "Where did you get these?!"

123. Then said, "You are not supposed to have these!!"

124. After regaining his composure, Glenn Wilson Jr asked Petitioner Thomas-Wayne, "What do you care if your Note is being traded in China?" Was he admitting that it was?

125. On or about February 3, 2010 Petitioners complained about Respondent BANK OF AMERICA and involved parties again on paper to Commissioner Glenn Wilson, and;

126. No response was forthcoming;

127. In the Early Part of 2009, Petitioners started to get educated on the monetary system, fractional reserve banking, demand deposit accounts, and

128. The public and private side of banking and found out that they never did get a loan at all,

129. but by their signature, created the credit in which first said lender monetized, then;

130. illegally securitized the account;

131. Pursuant to Banking regulations, Respondent could not lend its' depositors money, nor

132. could it or any other lender lend its' credit,

133. It appears Respondent risked nothing to warrant a vested interest in the home of Petitioners. Did Respondent take over servicing rights from an investment pool of securitized accounts?

134. Respondent never produced an original contract, or the Original Note, that gave them standing to foreclose;

135. The Note, as a promise to pay, in and of itself is not lawful money,

136. It must be converted in a switch of currency collateralized by assets that then become more "deposits"

137. That give rise to more promises to pay, which are not money, and;

138. has by now been converted into more debt obligations, that are not money, several times over, nor;

139. could Respondent produce a binding contract signed by Petitioner and Respondent in good faith, and;

140. with all the elements of contract to withstand a court action;

141. On or about August 12, 2009 Respondent BANK OF AMERICA was sent notice again of the Petitioners knowledge of the fraudulent activity,

142. Respondent **failed to answer.**

143. Petitioners have no record or evidence that Respondent has suffered any loss due to its presumption of a debt owed to it by Petitioners;

144. It is believed that the funds generated by the several sales and / or transfers of the Note were the actual funds (debt notes) put up by Respondents at the unlawful foreclosure sale;

145. On or about July 17, 2009 and on or about August 12, 2009, Respondent was asked to produce original paperwork that authorized its' standing to foreclose,

146. Respondent **failed to answer.**

147. Petitioners have no record or evidence that Respondent can produce an original promissory Note with wet ink signatures,

148. with lenders signature and proof of full disclosure and actual consideration,

149. These issues were brought to the attention of lawful authority and public servants, who ignored Petitioners requests and failed to answer or investigate.

150. On or about October 26, 2009 fellow Respondent LORI R. SWANSON, a trustee and fiduciary of the public trust, was notified by verified affidavit of a crime and or crimes being committed against Petitioners;

151. Respondents Oath of Office was accepted in writing and,

152. Petitioners non corporate status was made known.

153. No response of any kind was received from Respondent.

154. However, a phone call from a Kai Richter, Assistant Attorney, yielded little if any assistance.

155. The theme of the conversation was "Get an attorney."

156. Political articles and statements from Respondents Office claim to take a solid stance against Mortgage and related fraud.

157. On or about December 23, 2009 Respondent was again notified by verified affidavit of criminal activity that had taken place pursuant to the unlawful foreclosure sale on December 8th, 2009 against Petitioners.

158. Again, no response was received from Respondents Office.

159. Pursuant to the above attempts to notice Respondents Office of a wide array of criminal activity, Petitioner has no record or evidence that;

   A.) Respondent has not failed to prevent conspiracy (42 U.S.C. 1986, and section 1985 (1)(3)) under color of law (Title 18 U.S.C. 241)

160. On or about April 2009, Petitioners became familiar with the Credit River Decision, Jerome Daly vs Bank of Montgomery, a precedent setting case that happened in Scott County Minnesota;

161. and was and later upheld by the Minnesota Supreme Court on its own motion.

162. As the lender did not lend " Money ", it was Petitioners signature that created the funds. "See modern Money Mechanics Printed by the Federal Reserve Bank of Chicago"

163. This made Petitioners then questioned all credit accounts, such as credit cards;

164. in which, when questioned, the companies also refused to answer upon their full commercial liability;

165. and provide evidence they in fact loaned any lawful money;

166. or consideration, or provided a two party contract that Respondent or its' agents or assigns even endorsed.

167. On or about May 2009, Petitioners were sent notice from BANK OF AMERICA to send payments to: BAC Home Loan Servicing, LP., P.O., Box 650070 Dallas, Texas 75265.

168.  On or about June 1, 2009, Petitioners received notice of payments due so Petitioners paid amount due, as the record will show

169.  On or about July 3, 2009 transaction on statement from Respondent BANK OF AMERICA reflects no payment due again until August 1, 2009;

170. and Petitioners would not be considered late on "payments" until after August 17, 2009.

171. All Respondents in receipt of affidavits had an opportunity to fulfill an obligation to Petitioners;

172. yet they did not respond,

173. thereby defaulting administratively.

174. The agreement to the facts were,

    A.) Banks or lenders did not lend "money",

    B.) lawful or otherwise,

    C.) nor would they produce the Original "Note"

    D.) or prove any of them sustained a loss

    E.) all enriched themselves in a fraudulent scheme

175.  Petitioners have never received a written rebuttal or response from BANK OF AMERICA, or BAC Home Loan Servicing, LP, as RESPA Laws require of them;

176.  So this "presumed" debt was never validated nor verified as demanded and required by law.

177.  On or about October 18, 2009, A Jane Doe during a meeting in her Office regarding this unlawful foreclosure did tell Petitioners Daughter, "Oh honey, the Sheriff is going to kick you out of your house."

178.  When asked about the fraudulent situation, Jane Doe said, "I can't help you. I don't know anything about the Constitution."

179. This turn of events led Petitioners to believe that their sworn public servants were intending to steal or thereby allow for the theft of their home.

180. On or about November 30th, 2009 from Hennepin County Attorney's Office Petitioners received letter stating to go to local law enforcement agency, and;

181. That his office did in fact receive the documentation from Petitioners about unlawful foreclosures and Mortgage Fraud and they refused to investigate.

182. Petitioners went to the several agencies and were told by all they did not and do not have jurisdiction when in fact they did, or failed to respond.

183. On or about November 1, 2009 **Petitioners** had served to: **Minnesota Attorney General, Lori Swanson presenting** her with notice, evidence and Affidavit(s) served by Process by Excel Legal Courier at her home **and;**

184. **Recorded written Affidavits accepting her oath of office by contract,** noticing her of the unlawful foreclosure about to take place, as this matter needed her urgent attention, however;

185. Respondent refused to answer. Respondent ignored Petitioners attempts and requests to meet with her.

186. Petitioners again on or about **12/24/2009 made another attempt to Notice, LORI R. SWANSON, Minnesota State Attorney General** at: 445 Minnesota Street, Saint Paul, Minnesota served to her Affidavit with Exhibits **Document: 2011552.001 and Consumer Complaint Form requesting to meet with her personally** with additional supporting documentation referring to the said foreclosure sale of our home on December 8, 2009;

187. On or about January 19, 2010, Petitioners returned to Minnesota Deputy Attorney General, Karen D. Olson, 445 Minnesota Street Saint Paul MN, 55101

Notice, that her answer to Petitioners was a non response to our affidavits and complaint.

188. Petitioners sent her additional documentation for her to review. She did not respond.

189. On or about June 6, 2010, A written Notice of Non Response was sent to Respondent LORI R. SWANSON;

190. Again, Respondent did not answer;

191. Nor would she meet with Petitioners.

192. The verified evidence Petitioners presented to her is overwhelming with respect to money creation, banking laws and related fraud.

193. Instead Respondent LORI SWANSON, Attorney General is attempting to punish Petitioners at the State level for being "whistleblowers" and using their remedy for protecting Petitioners property and assets.

194. It appears evident fellow Respondent may have a vested interest in Mortgage backed securities for herself and the STATE OF MINNESOTA.

195. Respondent refused to uphold Petitioners rights pursuant to her promissory Oath and protect the interest of the Public Trust.

196. The documentation Petitioners sent Respondent LORI SWANSON was also to show her our efforts to contact and Notice many other public servants and party's who;

197. were acting as though they also had beneficial interest in foreclosing on Petitioners home by their acts, actions and failure to act to prevent a crime;

198. Petitioners were denied rights to record lawful documents which they believe would have stopped this unlawful foreclosure transaction.

## **VII Other State Official Noticed**

199.   On or about 12/14/2009 Petitioners met with **Glenn Wilson Jr, Minnesota State Insurance Commissioner** and his Attorney Alberto Quintela in the mid morning at: Minnesota Department of Commerce, The Golden Rule Building 85 7th Place East  Suite 500 Saint Paul, MN 55101-2198,and;

200.   On or about 2/8/2010 we served **Glenn Wilson Jr., Minnesota State Insurance** Commissioner Affidavit document: 707707 recorded at the Sherburne County Recorders Office Misc Filings and Complaint and affidavits accepting his oath of office;

201. Mr. Commissioner did not answer;

202. On or about June 6, 2010 Petitioners served through Notary and UPS Affidavit of Non response with an opportunity to cure, again, Mr. Commissioner did not answer, and;

203. Copies of affidavits of non response addressing the Notice, Complaint Affidavits and other documents Petitioners served to Glenn Wilson Jr, Minnesota State Insurance Commissioner.

204. He has since moved, is out of office, and his financial reports confirm he has /or had banking investments in China, and possibly at the time of Petitioners conference with him;

205. Petitioners feel this is now the Elected Official LORI R. SWANSON, Minnesota Attorney Generals' Responsibility to settle, as she has now admitted there was fraud based on the National Settlement with the banks, but instead;

206. She seems to be using her Office to attempt to punish Petitioners for moving forward with their remedy when she or the State would not previously respond or provide remedy or redress;

207. On or about June 6, 2010 Notice of Non responses were sent to several Minnesota State Elected or appointed Officials and/or Agents;

208. that did not respond to our concerns about this unlawful foreclosure and;

209. on or about June 6, 2010 Notice of Non responses were sent to the Respondents, lenders, servicers attorneys and other parties that were served notice of this fraudulent foreclosure, or;

210.  who acted in the process and did not respond to our concerns and;

211.  the matters involved in written complaints such as,

    A.) Verified Affidavits

    B.) other documents served to Respondents, since this matter started, were noticed that by their acts, actions and;

    C.) failure to act, by their non-response, administrative record was made with an opportunity to cure.

212. From 8/31/2009 through 10/11/2010 What Petitioners believe, because of the foreclosure ad and the oppressive acts of the Foreclosure law firm;

213. Petitioners received repeated solicitations from several realtors wanting to buy or sell the house, further terrorizing Petitioners family;

214. Petitioners noticed them all in writing approximately 28 times to cease and desist, yet the unwanted correspondences continued.

215. On or about January 2010 Petitioner called the Sheriffs Department after the sale and asked Deputy Sergeant to prove the lender provided valid funds to purchase the house. He refused to return the call;

216. Who did BAC Home Loan Servicing buy the house from at the Sheriffs sale? From themselves?;

217. as the paperwork the attorney drafted to record is more evidence of the what appears to be fraudulent recordings.

218. This transaction may not exist on the tax records either as a true bill of sale.

219. On or about January 2010 through June 2010 Petitioners continued to try to contact lawful authority and elected and appointed public servants for help in this matter, and were repeatedly ignored;

220. On 6/10/2010 a notice dated 6/9/2010, a Curt Pankratz, an agent for a Claude Worrell, trespassed onto property and posted on Petitioners door that Fannie Mae owned their home and that document stated;

221. "Fannie Mae has engaged a real estate agent to manage this property and as occupant of this property to make you (Petitioners) aware of some options that may be available, documents stated";

222. "Please review the notice and contact the agent listed immediately to advise of your intentions".

223. "If you have questions regarding your rights you should seek the advice of an attorney"......RE/Max Results and the REO Group;

224. On 6/18/2010 Robbed at gun point at 10:15 a.m. by St Paul Police for the STATE OF MINNESOTA , Daniel Anderson Investigator, violating a No trespass Notice posted on the door and recorded in the public record;

225.  Daniel Anderson did not have a signed affidavit with proof of an injured party or a lawful 4th amendment warrant, and yet;

226. two women and 8 plus men ushered in by Minneapolis Police on the order of Hennepin County to remove computers and documents that may have prevented Petitioners eviction;

227. And proved Petitioners claims of widespread fraud involving this foreclosure action;

228. Order Signed by Judge Patricia Belois, that violated the 4 th, 5 th, and 6th Amendment of the Constitution for the united States of America and Article 1, Sections 1, 2, 6, 7 and 10 of the Minnesota Constitution, violating Petitioners rights, and authorizing the theft of documentation needed to save Petitioners home and;

229. property has not been returned to this date after several written demands.

230. An eviction notice was posted on Petitioners door 6/23/2010 eviction and summons John Doe, Jane Doe and Mary Roe and ABC Corporation;

231. On or about 6/22/2010 Petitioners tried to serve Sergeant Daniel Anderson, St Paul Police Department Affidavit of truth contracts 714760 and 716635, letter and unlawful warrant;

232.  No one would accept service at St. Paul Police Department,

Process server was directed to try St Paul City Attorney who refused service.

233. Process server was directed to try Ramsey County Attorney who refused service;

234. On or about 6/23/2010 Process server made another attempted to serve St Paul Chief of Police Thomas Smith directly, he also refused service.

235. Service to Daniel Anderson was finally accomplished on or about July 15, by Shari Moore, authorized to accept service;

236. Petitioners NOTICED Sergeant Anderson that it would be a violation of their 5th amendment rights to use their own (stolen) property against them, and by his failure to answer, or produce a sworn affidavit, he agreed;

237. On or about July, 2010 inquired about Daniel Andersons signed oath of office and was told he does not have one. **THIS SO CALLED PEACE (POLICE) OFFICER IS OPERATING WITHOUT A SIGNED OATH OF OFFICE?**

238. Also inquired about Chief Thomas Smiths sworn oath of office and was sent one in which his name was blocked out, or otherwise redacted.

239. On 6/30/2010 approximately 10:00AM notice was taped to the door to leave or the county would use all force necessary to evict Petitioners;

240. On July 2, 2010 Petitioners were evicted bringing what appeared to be a conspiracy against Petitioners full circle;

241. On or about December 12, 2010, Petitioners filed a complaint and bill, and reported the unlawful raid to St Paul Police Internal affairs, yet never received a response, nor payment of the bill;

242. Petitioners then filed a complaint with FBI, and the Department of Justice and to this date have not received a response;

243. on: Jan 4, 2012 approx 2:00PM-3:00PM Petitioners were kidnapped without warrant By Officers who refused to name themselves, of the St. Paul Police Department, acting for the STATE OF MINNESOTA;

244. From: 7108 Georgia Avenue North, Brooklyn Park, Minnesota where Petitioners were taking care of Leola May of the Family of Connery, who had been on hospice for the last 6 months putting her life at risk with no one to care for her.

245. They forced their way into Petitioners mothers home and refused to give identification,

246. Officers actually had tape over their badge numbers,

247. and no proof of a signed warrant or any warrant or were they provided the nature of the charges against them.

248. Six plus St Paul Police Officers escorted in by Brooklyn Park Police Sergeant Sands, Badge #165, Petitioners taken to Ramsey County Jail without delivery to a magistrate as demanded, and;

249. Still no charges were made known against Petitioners;

250. On January 5, 2012 at a hearing State of Minnesota wanted to extort $100,000 bail from each Petitioner, but instead, extorted signatures for their freedom;

## NOTICE

Minnesota Attorney General LORI R. SWANSON has settled with BANK OF AMERICA in the national settlement, so she has thereby agreed that all Petitioners facts are true and correct with respect to the foreclosure crisis and the details of our case, and has also agreed that Petitioners were unlawfully foreclosed upon and had the right to pursue the remedy of their choosing.

Without unreasonable cost to anyone, a simpler thing would have been for Respondents to pay closer attention to their obligations and duties when dealing with the public and their concerns. This matter may have been resolved by a meeting of the minds in good faith like men and women are supposed to do, not hide behind a superior knowledge of the legal system in order to charge our brothers.

## DEMAND FOR RELIEF

A demand for judgment is necessary for the relief to which the pleader claims to be entitled. If the recovery of money or damages is demanded, the amount demanded shall be stated.

1. Prayer for relief to be made whole prior to the injury;

2. To have all property returned or replaced;

3. To have all State allegations against the Petitioners dismissed with prejudice;

4. To be given monetary damages for overwhelming post traumatic stress caused by the Respondents, as a jury or the Court deems fit.

5. Monetary damages in the amount of how much the banks made off the names of the Petitioners, by selling their names to other banks, and the Petitioners request that 2/3 of these damages go to pay the public debt and the 1/3 comes to the Petitioners under Title 31 U.S.C. section 3729, and the 14th amendment section 4 as a bounty.

6. The Petitioners request that a federal injunction be placed against the STATE OF MINNESOTA or the State of Minnesota, the County of Ramsey and the County of Hennepin as a bar from bringing any future action against the Petitioners as a means of retaliation.

## **Verified Affidavit**

1.) Petitioners make the foregoing complaint and this affidavit with belief that it is true, complete, correct, and not misleading to the best of their ability;

2.) Petitioners have no record or evidence and believes none exists that Petitioners have not been victims of an unlawful foreclosure conducted by Respondent BANK OF AMERICA N.A. its subsidiaries' and its' known and unknown Agents;

3.) Petitioners have no knowledge of any record or evidence and believe none exists that on February 27, 2007 a lawful two party contract was executed and done so with the willful intent to use superior knowledge by Respondents for their economic advantage;

4.) Petitioners have no knowledge of any record or evidence and believe none exists that they did not notice several times the STATE OF MINNESOTA and it's Officers and Agencies by administrative process and to, LORI R. SWANSON, the

Attorney General of the State of Minnesota in her Private and Official Capacity of the crimes being committed against said Petitioners;

5.) Petitioners have no knowledge of any record or evidence and believe none exists that the STATE OF MINNESOTA by and through LORI R. SWANSON, as Attorney General for the STATE OF MINNESOTA did not agree to a settlement with major Banks and BANK OF AMERICA, N.A., confirming publicly the foreclosure process used against the Petitioners was unlawful and fraudulent;

6.) Petitioners have no knowledge of any record or evidence and believe none exists that the district court of the United States is not a proper Constitutional Article III section 2 court, available to provide opportunities for redress and remedy for Petitioners, as they are now invoking;

7.) Petitioners have no record or evidence and believe none exists that LORI R. SWANSON'S sworn Oath of office is not a commercial contract;

8.) Petitioners have no knowledge of any record or evidence and believe none exists that either of them is an alien enemy under Title 50 U.S.C. Chapter 3 section 23;

9.) The Petitioners will make reference to the State penalty section of misconduct

or abuse of a public office to show that those who hold a public office lack

immunities from civil action or even criminal action.

**All rights reserved without prejudice, without recourse**

By: _Glenn-Wayne: Eilert_

By, :Thomas-Wayne: of the Family of:Eilertson

By: _Lisa-Joan Connery: Eilertson_

By :Lisa-Joan Connery: of the Family of:Eilertson
c/o 7108 Georgia Avenue North
Brooklyn Park, Minnesota [55428]
763-561-0621
intruth618@gmail.com

State of Minnesota )
                   ) ss.
County of Hennepin )

Before me _Julie Sander_ , a Notary Public on this _5th_ day of
March, 2012 A.D. the man Thomas-Wayne: and the woman Lisa-Joan Connery:
of the family of:Eilertson subscribed and sworn, did appear before me and
proved on the basis of satisfactory evidence to be the man and woman whose
names are subscribed to the within instrument and acknowledged to me that they
executed said instrument as their free will act and deed.

_Julie T. Sander_
Notary Public

_1/31/16_
**My commission expires**

SEAL

JULIE TERESA SANDER
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/16

## PENALTY SECTION

**MN Statutes. 609.43 MISCONDUCT OF PUBLIC OFFICER OR EMPLOYEE.**

A public officer or employee who does any of the following, for which no other sentence is specifically provided by law, may be sentenced to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both:

(1) intentionally fails or refuses to perform a known mandatory, nondiscretionary, ministerial duty of the office or employment within the time or in the manner required by law; or

(2) in the capacity of such officer or employee, does an act knowing it is in excess of lawful authority or knowing it is forbidden by law to be done in that capacity; or

(3) under pretense or color of official authority intentionally and unlawfully injures another in the other's person, property, or rights; or

(4) in the capacity of such officer or employee, makes a return, certificate, official report, or other like document having knowledge it is false in any material respect.

**609.445 FAILURE TO PAY OVER STATE FUNDS.**

Whoever receives money on behalf of or for the account of the state or any of its agencies or subdivisions and intentionally refuses or omits to pay the same to the state or its agency or subdivision entitled thereto, or to an officer or agent authorized to receive the same, may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both.

**609.455 PERMITTING FALSE CLAIMS AGAINST GOVERNMENT.**

A public officer or employee who audits, allows, or pays any claim or demand made upon the state or subdivision thereof or other governmental instrumentality within the state which the public officer or employee knows is false or fraudulent in whole or in part, may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both.

**609.456 REPORTING TO STATE AUDITOR AND LEGISLATIVE AUDITOR REQUIRED.**

*Subdivision 1. State auditor.*

Whenever a public employee or public officer of a political subdivision or charter commission discovers evidence of theft, embezzlement, unlawful use of public funds or property, or misuse of public funds by a charter commission or any person authorized to expend public funds, the employee or officer shall promptly report to law enforcement and shall promptly report in writing to the state auditor a detailed description of the alleged incident or incidents. Notwithstanding chapter 13 or any other statute related to the classification of government data, the public employee or public officer shall provide data or information related to the alleged incident or incidents to the state auditor and law enforcement, including data classified as not public.

**609.495 AIDING AN OFFENDER.**

*Subdivision 1. Definition of crime.*

(a) Whoever harbors, conceals, aids, or assists by word or acts another whom the actor knows or has reason to know has committed a crime under the laws of this or another state or of the United States with intent that such offender shall avoid or escape from arrest, trial, conviction, or punishment, may be sentenced to imprisonment for not more than three years or to payment of a fine of not more than $5,000, or both if the crime committed or attempted by the other person is a felony.

**609.497 ENGAGING IN BUSINESS OF CONCEALING CRIMINAL PROCEEDS.**

*Subdivision 1. Crime.*

A person is guilty of a felony and may be sentenced under subdivision 2 if the person knowingly initiates, organizes, plans, finances, directs, manages, supervises, or otherwise engages in a business that has as a primary or secondary purpose concealing money or property that was gained as a direct result of the commission of a felony under this chapter or chapter 152, or of an offense committed in another jurisdiction that would be a felony under this chapter or chapter 152 if committed in Minnesota.

*Subd. 2. Penalty.*

A person convicted under subdivision 1 may be sentenced to imprisonment for not more than 20 years, or to payment of a fine of not more than $1,000,000, or both.

**609.498 TAMPERING WITH WITNESS.**

*Subdivision 1. Tampering with witness in the first degree.*

Whoever does any of the following is guilty of tampering with a witness in the first degree and may be sentenced as provided in subdivision 1a:

(a) intentionally prevents or dissuades or intentionally attempts to prevent or dissuade by means of force or threats of injury to any person or property, a person who is or may become a witness from attending or testifying at any trial, proceeding, or inquiry authorized by law;

(b) by means of force or threats of injury to any person or property, intentionally coerces or attempts to coerce a person who is or may become a witness to testify falsely at any trial, proceeding, or inquiry authorized by law;

(c) intentionally causes injury or threatens to cause injury to any person or property in retaliation against a person who was summoned as a witness at any trial, proceeding, or inquiry authorized by law, within a year following that trial, proceeding, or inquiry or within a year following the actor's release from incarceration, whichever is later;

(d) intentionally prevents or dissuades or attempts to prevent or dissuade, by means of force or threats of injury to any person or property, a person from providing information to law enforcement authorities concerning a crime;

(e) by means of force or threats of injury to any person or property, intentionally coerces or attempts to coerce a person to provide false information concerning a crime to law enforcement authorities; or

(f) intentionally causes injury or threatens to cause injury to any person or property in retaliation against a person who has provided information to law enforcement authorities concerning a crime within a year of that person providing the information or within a year of the actor's release from incarceration, whichever is later.

**Subd. 1a. Penalty.**

Whoever violates subdivision 1 may be sentenced to imprisonment for not more than five years or to payment of a fine not to exceed $10,000.

**Subd. 1b. Aggravated first-degree witness tampering.**

(a) A person is guilty of aggravated first-degree witness tampering if the person causes or, by means of an implicit or explicit credible threat, threatens to cause great bodily harm or death to another in the course of committing any of the following acts intentionally:

(1) preventing or dissuading or attempting to prevent or dissuade a person who is or may become a witness from attending or testifying at any criminal trial or proceeding;

(2) coercing or attempting to coerce a person who is or may become a witness to testify falsely at any criminal trial or proceeding;

(3) retaliating against a person who was summoned as a witness at any criminal trial or proceeding within a year following that trial or proceeding or within a year following the actor's release from incarceration, whichever is later;

(4) preventing or dissuading or attempting to prevent or dissuade a person from providing information to law enforcement authorities concerning a crime;

(5) coercing or attempting to coerce a person to provide false information concerning a crime to law enforcement authorities; or

(6) retaliating against any person who has provided information to law enforcement authorities concerning a crime within a year of that person providing the information or within a year of the actor's release from incarceration, whichever is later.

(b) A person convicted of committing any act prohibited by paragraph (a) may be sentenced to imprisonment for not more than 20 years or to payment of a fine of not more than $30,000, or both.

### Subd. 2. Tampering with a witness in the second degree.

Whoever does any of the following is guilty of tampering with a witness in the second degree and may be sentenced as provided in subdivision 3:

(a) intentionally prevents or dissuades or intentionally attempts to prevent or dissuade by means of any act described in section 609.27, subdivision 1, clause

(3), (4), or (5), a person who is or may become a witness from attending or testifying at any trial, proceeding, or inquiry authorized by law;

(b) by means of any act described in section 609.27, subdivision 1, clause (3), (4), or (5), intentionally coerces or attempts to coerce a person who is or may become a witness to testify falsely at any trial, proceeding, or inquiry authorized by law;

(c) intentionally prevents or dissuades or attempts to prevent or dissuade by means of any act described in section 609.27, subdivision 1, clause (3), (4), or (5), a person from providing information to law enforcement authorities concerning a crime; or

(d) by means of any act described in section 609.27, subdivision 1, clause (3), (4), or (5), intentionally coerces or attempts to coerce a person to provide false information concerning a crime to law enforcement authorities.

### Subd. 2a. Tampering with a witness in the third degree.

(a) Unless a greater penalty is applicable under subdivision 1, 1b, or 2, whoever does any of the following is guilty of tampering with a witness in the third degree and may be sentenced as provided in subdivision 3:

(1) intentionally prevents or dissuades or intentionally attempts to prevent or dissuade by means of intimidation, a person who is or may become a witness from attending or testifying at any trial, proceeding, or inquiry authorized by law;

(2) by means of intimidation, intentionally influences or attempts to influence a person who is or may become a witness to testify falsely at any trial, proceeding, or inquiry authorized by law;

(3) intentionally prevents or dissuades or attempts to prevent or dissuade by means of intimidation, a person from providing information to law enforcement authorities concerning a crime; or

(4) by means of intimidation, intentionally influences or attempts to influence a person to provide false information concerning a crime to law enforcement authorities.

(b) In a prosecution under this subdivision, proof of intimidation may be based on a specific act or on the totality of the circumstances.

**Subd. 3. Sentence.**

(a) Whoever violates subdivision 2 is guilty of a gross misdemeanor.

(b) Whoever violates subdivision 2a is guilty of a misdemeanor.

**Subd. 4. No bar to conviction.**

Notwithstanding section 609.035 or 609.04, a prosecution for or conviction of the crime of aggravated first-degree witness tampering is not a bar to conviction of or punishment for any other crime.

**609.50 OBSTRUCTING LEGAL PROCESS, ARREST, OR FIREFIGHTING.**

**Subdivision 1. Crime.**

Whoever intentionally does any of the following may be sentenced as provided in subdivision 2:

(1) obstructs, hinders, or prevents the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a criminal offense;

(2) obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties;

(3) interferes with or obstructs a firefighter while the firefighter is engaged in the performance of official duties;

(4) interferes with or obstructs a member of an ambulance service personnel crew, as defined in section 144E.001, subdivision 3a, who is providing, or attempting to provide, emergency care; or

(5) by force or threat of force endeavors to obstruct any employee of the Department of Revenue while the employee is lawfully engaged in the performance of official duties for the purpose of deterring or interfering with the performance of those duties.

### Subd. 2. Penalty.

A person convicted of violating subdivision 1 may be sentenced as follows:

(1) if (i) the person knew or had reason to know that the act created a risk of death, substantial bodily harm, or serious property damage; or (ii) the act caused death, substantial bodily harm, or serious property damage; to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both;

(2) if the act was accompanied by force or violence or the threat thereof, and is not otherwise covered by clause (1), to imprisonment for not more than one year or to payment of a fine of not more than $3,000, or both; or

(3) in other cases, to imprisonment for not more than 90 days or to payment of a fine of not more than $1,000, or both.

**609.527 IDENTITY THEFT.**

***Subdivision 1. Definitions.***

(a) As used in this section, the following terms have the meanings given them in this subdivision.

(b) "Direct victim" means any person or entity described in section <u>611A.01, paragraph (b)</u>, whose identity has been transferred, used, or possessed in violation of this section.

(c) "False pretense" means any false, fictitious, misleading, or fraudulent information or pretense or pretext depicting or including or deceptively similar to the name, logo, Web site address, e-mail address, postal address, telephone number, or any other identifying information of a for-profit or not-for-profit business or organization or of a government agency, to which the user has no legitimate claim of right.

(d) "Identity" means any name, number, or data transmission that may be used, alone or in conjunction with any other information, to identify a specific individual or entity, including any of the following:

(1) a name, Social Security number, date of birth, official government-issued driver's license or identification number, government passport number, or employer or taxpayer identification number;

(2) unique electronic identification number, address, account number, or routing code; or

(3) telecommunication identification information or access device.

(e) "Indirect victim" means any person or entity described in section <u>611A.01, paragraph (b)</u>, other than a direct victim.

(f) "Loss" means value obtained, as defined in section 609.52, subdivision 1, clause (3), and expenses incurred by a direct or indirect victim as a result of a violation of this section.

(g) "Unlawful activity" means:

(1) any felony violation of the laws of this state or any felony violation of a similar law of another state or the United States; and

(2) any nonfelony violation of the laws of this state involving theft, theft by swindle, forgery, fraud, or giving false information to a public official, or any nonfelony violation of a similar law of another state or the United States.

(h) "Scanning device" means a scanner, reader, or any other electronic device that is used to access, read, scan, obtain, memorize, or store, temporarily or permanently, information encoded on a computer chip or magnetic strip or stripe of a payment card, driver's license, or state-issued identification card.

(i) "Reencoder" means an electronic device that places encoded information from the computer chip or magnetic strip or stripe of a payment card, driver's license, or state-issued identification card, onto the computer chip or magnetic strip or stripe of a different payment card, driver's license, or state-issued identification card, or any electronic medium that allows an authorized transaction to occur.

(j) "Payment card" means a credit card, charge card, debit card, or any other card that:

(1) is issued to an authorized card user; and

(2) allows the user to obtain, purchase, or receive credit, money, a good, a service, or anything of value.

***Subd. 2. Crime.***

A person who transfers, possesses, or uses an identity that is not the person's own, with the intent to commit, aid, or abet any unlawful activity is guilty of identity theft and may be punished as provided in subdivision 3.

***Subd. 3. Penalties.***

A person who violates subdivision 2 may be sentenced as follows:

(1) if the offense involves a single direct victim and the total, combined loss to the direct victim and any indirect victims is $250 or less, the person may be sentenced as provided in section 609.52, subdivision 3, clause (5);

(2) if the offense involves a single direct victim and the total, combined loss to the direct victim and any indirect victims is more than $250 but not more than $500, the person may be sentenced as provided in section 609.52, subdivision 3, clause (4);

(3) if the offense involves two or three direct victims or the total, combined loss to the direct and indirect victims is more than $500 but not more than $2,500, the person may be sentenced as provided in section 609.52, subdivision 3, clause (3);

(4) if the offense involves more than three but not more than seven direct victims, or if the total combined loss to the direct and indirect victims is more than $2,500, the person may be sentenced as provided in section 609.52, subdivision 3, clause (2); and

(5) if the offense involves eight or more direct victims; or if the total, combined loss to the direct and indirect victims is more than $35,000; or if the offense is related to possession or distribution of pornographic work in violation of section

617.246 or 617.247; the person may be sentenced as provided in section 609.52, subdivision 3, clause (1).

**Subd. 4. Restitution; items provided to victim.**

(a) A direct or indirect victim of an identity theft crime shall be considered a victim for all purposes, including any rights that accrue under chapter 611A and rights to court-ordered restitution.

(b) The court shall order a person convicted of violating subdivision 2 to pay restitution of not less than $1,000 to each direct victim of the offense.

(c) Upon the written request of a direct victim or the prosecutor setting forth with specificity the facts and circumstances of the offense in a proposed order, the court shall provide to the victim, without cost, a certified copy of the complaint filed in the matter, the judgment of conviction, and an order setting forth the facts and circumstances of the offense.

**Subd. 5. Reporting.**

(a) A person who has learned or reasonably suspects that a person is a direct victim of a crime under subdivision 2 may initiate a law enforcement investigation by contacting the local law enforcement agency that has jurisdiction where the person resides, regardless of where the crime may have occurred. The agency must prepare a police report of the matter, provide the complainant with a copy of that report, and may begin an investigation of the facts, or, if the suspected crime was committed in a different jurisdiction, refer the matter to the law enforcement agency where the suspected crime was committed for an investigation of the facts.

(b) If a law enforcement agency refers a report to the law enforcement agency where the crime was committed, it need not include the report as a crime committed in its jurisdiction for purposes of information that the agency is

required to provide to the commissioner of public safety pursuant to section 299C.06.

**Subd. 5a. Crime of electronic use of false pretense to obtain identity.**

(a) A person who, with intent to obtain the identity of another, uses a false pretense in an e-mail to another person or in a Web page, electronic communication, advertisement, or any other communication on the Internet, is guilty of a crime.

(b) Whoever commits such offense may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both.

(c) In a prosecution under this subdivision, it is not a defense that:

(1) the person committing the offense did not obtain the identity of another;

(2) the person committing the offense did not use the identity; or

(3) the offense did not result in financial loss or any other loss to any person.

**Subd. 5b. Unlawful possession or use of scanning device or reencoder.**

(a) A person who uses a scanning device or reencoder without permission of the cardholder of the card from which the information is being scanned or reencoded, with the intent to commit, aid, or abet any unlawful activity, is guilty of a crime.

(b) A person who possesses, with the intent to commit, aid, or abet any unlawful activity, any device, apparatus, equipment, software, material, good, property, or supply that is designed or adapted for use as a scanning device or a reencoder is guilty of a crime.

(c) Whoever commits an offense under paragraph (a) or (b) may be sentenced to imprisonment for not more than five years or to payment of a fine of not more than $10,000, or both.

### Subd. 6. Venue.

Notwithstanding anything to the contrary in section 627.01, an offense committed under subdivision 2, 5a, or 5b may be prosecuted in:

(1) the county where the offense occurred;

(2) the county of residence or place of business of the direct victim or indirect victim; or

(3) in the case of a violation of subdivision 5a or 5b, the county of residence of the person whose identity was obtained or sought.

### Subd. 7. Aggregation.

In any prosecution under subdivision 2, the value of the money or property or services the defendant receives or the number of direct or indirect victims within any six-month period may be aggregated and the defendant charged accordingly in applying the provisions of subdivision 3; provided that when two or more offenses are committed by the same person in two or more counties, the accused may be prosecuted in any county in which one of the offenses was committed for all of the offenses aggregated under this subdivision.

## Conclusion

1.      The Petitioners have laid out to the best of their ability the facts in this complaint as they are not attorneys. The Petitioners have been contacted by attorneys only to be turned down as they will not bring a claim against the State or be willing to address constitutional or statutes violations by State agents.

2.       The Petitioners have made their claim in common language before this court. The Petitioners are victims of official oppression, and neglect by those who hold a public trust.

3.       The Petitioners will point to this State Constitution under Article I Bill of Rights. These Rights have been denied to the Petitioners.

Section 1. **OBJECT OF GOVERNMENT.** Government is instituted for the security, benefit and protection of the people, in whom all political power is inherent, together with the right to alter, modify or reform government whenever required by the public good.

Sec. 2. **RIGHTS AND PRIVILEGES.** No member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or the judgment of his peers. There shall be neither slavery nor involuntary servitude in the state otherwise than as punishment for a crime of which the party has been convicted.

Sec. 4. **TRIAL BY JURY.** The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy. A jury trial may be waived by the parties in all cases in the manner prescribed by law. The legislature may provide that the agreement of five-sixths of a jury in a civil action or proceeding, after not less than six hours' deliberation, is a sufficient verdict. The legislature may provide for the number of jurors in a civil action or proceeding, provided that a jury have at least six members. [Amended, November 8, 1988]

Sec. 6. **RIGHTS OF ACCUSED IN CRIMINAL PROSECUTIONS.** In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by

law. In all prosecutions of crimes defined by law as felonies, the accused has the right to a jury of 12 members. In all other criminal prosecutions, the legislature may provide for the number of jurors, provided that a jury have at least six members. The accused shall enjoy the right to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel in his defense. [Amended, November 8, 1988]

Sec. 7. **DUE PROCESS; PROSECUTIONS; DOUBLE JEOPARDY; SELF-INCRIMINATION; BAIL; HABEAS CORPUS.** No person shall be held to answer for a criminal offense without due process of law, and no person shall be put twice in jeopardy of punishment for the same offense, nor be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property without due process of law. All persons before conviction shall be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great. The privilege of the writ of habeas corpus shall not be suspended unless the public safety requires it in case of rebellion or invasion.

Sec. 8. **REDRESS OF INJURIES OR WRONGS.** Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.

Sec. 10. **UNREASONABLE SEARCHES AND SEIZURES PROHIBITED.** The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.

**Sec. 11. ATTAINDERS, EX POST FACTO LAWS AND LAWS IMPAIRING CONTRACTS PROHIBITED.** No bill of attainder, ex post facto law, or any law impairing the obligation of contracts shall be passed, and no conviction shall work corruption of blood or forfeiture of estate.

<u>PRAYER FOR RELIEF</u>

The Petitioners prayer is for relief of this injustice and to correct any misunderstanding in peace, and to get back and restart their lives and recover their reputations and good names that were destroyed as a result of standing for the truth.

**All rights reserved without prejudice, without recourse**

By: _____

By, :Thomas-Wayne:of the Family of: Eilertson

By: _____

By, :Lisa-Joan Connery: of the Family of: Eilertson
c/o 7108 Georgia Avenue North
Brooklyn Park, Minnesota [55428]
763-561-0621

State of Minnesota   )
                     ) ss.
County of Hennepin

Before me _Julie Sander_, a Notary Public on this _5th_ day of March, 2012 A.D. the man Thomas-Wayne: and the woman Lisa-Joan Connery of the family of:Eilertson subscribed and sworn, did appear before me and proved on the basis of satisfactory evidence to be the man and woman whose names are subscribed to the within instrument and acknowledged to me that they executed said instrument as their free will act and deed.

_Julie T. Sander_
Notary Public
_1/31/16_

SEAL

JULIE TERESA SANDER
NOTARY PUBLIC - MINNESOTA
MY COMMISSION EXPIRES 01/31/16

**My commission expires**

Drafted by:Thomas-Wayne: and Lisa-Joan Connery: of the family of Eilertson
c/o 7108 Georgia Avenue North
Brooklyn Park Minnesota [55428]